**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

GARY P. JONES                                                   CIVIL ACTION

VERSUS                                                          NO. 06-0226

BURL CAIN, WARDEN                                              SECTION "R"(5)

<u>**REPORT AND RECOMMENDATION**</u>

        This matter was referred to the United States Magistrate Judge for the purpose of conducting hearings, including an evidentiary hearing, if necessary, and submission of proposed findings and recommendations for disposition pursuant to 28 U.S.C. §636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.  Upon review of the entire record, the court has determined that this matter can be disposed of without an evidentiary hearing.  <u>See</u> 28 U.S.C. §2254(e)(2).  Accordingly;

        IT IS HEREBY RECOMMENDED that the instant petition be **DENIED WITH PREJUDICE.**

## PROCEDURAL HISTORY[1]

Petitioner, Gary Jones, is a state prisoner currently incarcerated in the Louisiana State Penitentiary, Angola, Louisiana.  On October 28, 1999, petitioner was charged by bill of information with distribution of cocaine, in violation of La. R.S. 40:967(A).  On November 3, 1999, petitioner pleaded not guilty.  On November 12, 1999, probable cause was found to exist and petitioner's motion to suppress evidence was denied.  On April 6, 2000, a twelve-member jury found petitioner to be guilty as charged.  On September 22, 2000, petitioner was adjudicated to be a third-felony offender and was sentenced to a mandatory life sentence pursuant to the provisions of La. R.S. 15:529.1.

On June 13, 2001, the Louisiana Fourth Circuit Court of Appeal affirmed petitioner's conviction, but vacated his sentence, remanding the matter with instructions that the district court conduct a hearing for the purpose of providing petitioner with an opportunity "to show by clear and convincing evidence that the mandatory [life] sentence is unconstitutionally excessive as applied to him." Jones, No. 2000-KA-1894 at p. 9.  In accordance with the Fourth Circuit's remand, the district court conducted a

---

[1]Portions of the procedural history are taken from the Louisiana Fourth Circuit Court of Appeal's unpublished opinion, State v. Jones, 796 So.2d 939, No. 2000-KA-1894 (La. App. 4 Cir. June 13, 2001), a copy of which is contained in the State rec., vol. 1 of 4.

hearing and again sentenced petitioner to life imprisonment.  On June 26, 2002, the Louisiana Fourth Circuit Court of Appeal affirmed petitioner's life sentence.  State v. Jones, 825 So.2d 604, No. 2002-KA-0438 (La. App. 4 Cir. June 26, 2002) (unpublished opinion).[2]  Petitioner filed writ applications with both the Louisiana Supreme Court and the United States Supreme Court in connection with the Louisiana Fourth Circuit's June 26, 2002 adverse decision.  On February 21, 2003, the Louisiana Supreme Court denied petitioner relief.  State v. Jones, 837 So.2d 627 (La. 2003).  On June 2, 2003, the United States Supreme Court likewise denied petitioner's writ application.  Jones v. Louisiana, 539 U.S. 907 (2003).

Following the completion of his direct appeal proceedings, petitioner sought post-conviction relief.  Petitioner's efforts in this regard culminated on November 28, 2005, when the Louisiana Supreme Court denied his writ application.  State ex rel. Jones v. State, 916 So.2d 137 (La. 2005).

In the instant federal habeas corpus action, petitioner raises the following claims: 1) The state district court failed to comply with the state appellate court's order that petitioner be allowed to show that the mandatory life sentence was unconstitutional as applied to him; 2) His life sentence was excessive; 3) He was

_____

[2]A copy of the state appellate court's June 26, 2002 unpublished opinion is contained in the State rec., vol. 2 of 4.

entitled to the benefit of an amendment to Louisiana's Habitual Offender Law, specifically, La. R.S. 15:529.1(A)(1)(b)(ii); 4) Louisiana's Habitual Offender Law, La. R.S. 15:529.1, is unconstitutional; 5) Louisiana's Habitual Offender Law, La. R.S. 15:529.1, as applied to recidivists whose predicate offenses were the result of drug addiction, violates the Eighth Amendment ban on cruel and unusual punishment; and, 6) He received ineffective assistance of counsel.[3]  Having determined that the instant action is timely (see rec. doc. 9), and there being no contention that petitioner has failed to exhaust his state court remedies, as required under Rose v. Lundy, 455 U.S. 509 (1982), this court, after reviewing the applicable facts,[4] shall proceed to address the merits.

Sergeant Michael Glasser, who was working undercover while wearing plain clothes and riding in an unmarked car, testified at trial that about 11:00 p.m. on October 6, 1999, he was near the intersection of St. Ann and North Roman Streets when he observed the petitioner standing on the corner.  As the car approached the

---

[3]While a review of petitioner's supporting memorandum (rec. doc. 3) reflects that petitioner has listed seven claims, two of these claims, specifically, claims two and five, both concern allegations that his life sentence was unconstitutionally excessive. Accordingly, for purposes of the instant Report and Recommendation, said claims have been combined.

[4]The facts are taken from the Louisiana Fourth Circuit Court of Appeal's opinion, State v. Jones, 796 So.2d 939, No. 2000-KA-1894 (La. App. 4 Cir. 2001)(unpublished opinion).

corner, petitioner gestured for the vehicle to stop and then walked to the passenger side where Glasser was sitting.  Petitioner asked, "What do you need?" and Glasser responded, "I'm looking for a dime."  Petitioner then asked Glasser if he was a policeman and Glasser answered in the negative.  Petitioner next asked Glasser for a ten-dollar bill, then handed Glasser his wallet as collateral.  The wallet contained an LSU medical card in the name of Gary Jones.

Following the exchange of the ten-dollar bill for the wallet, petitioner walked down North Roman Street to Orleans Avenue and turned right, at which point, Glasser lost sight of him for a few minutes.  While petitioner was gone, Glasser used the police radio to describe petitioner to his backup team.  Petitioner then returned and again asked Glasser if he was a policeman.  When Glasser responded that he was not a policeman, petitioner handed him several loose pieces of a white rock substance.  As the vehicle in which he was riding drove away, Glasser alerted his backup team to the exact spot where petitioner was standing.  Glasser described petitioner as wearing a faded t-shirt, gray shorts and an ace bandage on his right leg.

Sergeant Cindy Scanlan, Officer Glasser's partner, testified that she was driving the unmarked car on October 6, 1999, when her assignment was to drive to an area of high drug traffic.  Sergeant Scanlan related the same facts as Officer Glasser.  Additionally,

she stated that after they radioed their backup team that the transaction was completed and drove away, they returned to be sure that the right person was being arrested, and they saw that petitioner had been detained by Officer Greenup.

Officer Randy Greenup testified that he was working as part of a "take down" team on October 6, 1999, in which Sergeants Glasser and Scanlan were serving in an undercover capacity.  Officer Greenup was about one block from the undercover officers and in radio contact with them as they made their purchase.  After receiving a radio message that the purchase was completed and a description of the man who sold the white substance, Officer Greenup drove into the area and arrested petitioner.  While Greenup was making the arrest, Sergeants Scanlan and Glasser drove by, looked at petitioner and, over the radio, identified him as the man who sold them white rocks.[5]  Petitioner was not in possession of any cocaine or any money when he was arrested.

**STANDARD OF REVIEW**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") includes a comprehensive overhaul of federal habeas corpus legislation, including 28 U.S.C. §2254.  Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and

---

[5]The parties stipulated that the white rocks purchased from petitioner were tested and proved to be crack cocaine.

law where there has been an adjudication on the merits in state court proceedings.

State court determinations of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. §2254(d)(1) and receive deference unless they were "contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States." Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000). The United States Supreme Court has advised that:

> Under the "contrary to" clause, a federal habeas corpus court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 1056 (2000); Hill, 210 F.3d at 485. Questions of fact found by the state court are "presumed to be correct ... and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" Hill, 210 F.3d at 485 (quoting 28 U.S.C.§2254(d)(2)).

**ANALYSIS**

> **Claim 1):   District Court Failed to Comply with Appellate Court's Order that Petitioner Be Allowed to Show that Life Sentence Was Unconstitutional As Applied to Him**

As noted earlier, the Louisiana Fourth Circuit, on June 13, 2001, vacated petitioner's original sentence and remanded the matter for the purpose of allowing the district court to conduct a hearing so that petitioner "may attempt to show by clear and convincing evidence that the mandatory [life] sentence [he received] is unconstitutionally excessive as applied to him." Jones, No. 2000-KA-1894 at p. 9.   In accordance with the state appellate court's remand, the district court conducted a resentencing hearing, following which, the court again imposed upon petitioner a life sentence.[6]  Petitioner argues that the district court failed to comply with the state appellate court's order because the district court refused to permit him "to develop additional facts that would have shown by clear and convincing evidence that the [p]etitioner is a drug addict, and as such, is an exception to the rule and should not have received a life sentence at the hearing."[7]  For the following reasons, petitioner's argument does not warrant federal habeas corpus relief.

---

[6]A copy of petitioner's resentencing transcript is contained in the State rec., vol. 2 of 4.

[7]See rec. doc. 3, petitioner's supporting memorandum at p. 6.

First, it is well established that federal habeas review is limited to questions of constitutional dimension. <u>See</u> <u>generally</u> <u>Jernigan v. Collins</u>, 980 F.2d 292, 298 (5th Cir. 1992), <u>cert</u>. <u>denied</u>, 508 U.S. 978 (1993); <u>Castillo v. Johnson</u>, 141 F.3d 218, 222 and 224 (5th Cir.), <u>cert</u>. <u>denied</u>, 524 U.S. 979 (1998). Absent a due process violation, the fact that petitioner's resentencing hearing may not have been in compliance with the state appellate court's remand order is of no moment for purposes of attaining federal habeas corpus relief.

Second, as the Louisiana Fourth Circuit made clear, in addressing the instant issue, petitioner suffered no due process violation in connection with his resentencing. While the district judge did not seek any testimony before resentencing petitioner to life imprisonment, his decision in this regard was not arbitrary, but rather, was based upon a presentence investigation report. The pertinent report, as the district court noted, reflected that petitioner's criminal history spanned "over a twenty year period", detailing that petitioner "had over forty-five arrests, multiple misdemeanor convictions, three felony convictions, and two 701 releases."[8] The district court observed that while petitioner "did not receive his first felony conviction until he reached the age of

---

[8]<u>See</u> State rec., vol. 2 of 4, resentencing transcript at p. 3, lines 15-19. A "701 release" refers to a release, pursuant to the provisions of La.C.Cr.P. art. 701D(2), which provides for the release of a defendant if "just cause" is not shown for failing to comply with the "speedy trial" provisions of Article 701.

35, he [had] been having negative interactions with the law since he was 17 years old.  In fact, he received his first misdemeanor conviction at the age of 17."[9]   The court concluded:   "The subject's criminal history indicates that he is unable to conform to the laws which govern our society."[10]  The state appellate court, in rejecting petitioner's claim that the district court had failed to comply with its remand order, agreed with the district's assessment regarding the seriousness of petitioner's past criminal transgressions, reasoning:  "[T]his Court remanded the case so that information about Jones' background could be brought to light. Unfortunately for Jones, the information in the pre-sentencing report indicates that he has a serious criminal history."  <u>State v. Jones</u>, No. 2002-KA-0438 at p. 3.

**Claim 2):  Life Sentence Was Excessive**

Petitioner complains that the life sentence he received under Louisiana's recidivist statute is violative of the constitutional prohibition against cruel and unusual punishment because all of his convictions were related to non-violent drug charges. Specifically, petitioner complains that the "basic facts behind [his] life sentence" were a 1994 discharge from the military due to

---

[9]<u>See</u> State rec., vol. 2 of 4, resentencing transcript at p. 3, lines 25-30.

[10]<u>See</u> State rec., vol. 2 of 4, resentencing transcript at p. 3, lines 30-32.

"drug usage"; a 1997 conviction for "simple possession of crack cocaine"; a 1998 conviction for "simple possession of crack cocaine"; and his conviction "in the instant case" in connection with "running $10 worth of someone else's crack cocaine to two undercover police officers who had solicited the sale."[11]  According to petitioner, his life sentence is excessive since, in connection with the instant crime, he "was a mere pigeon who ... allowed himself to be used to protect the real dealer" and his "two prior simple possession convictions [were] relatively victimless crimes".[12]

In addressing petitioner's claim that his life sentence was unconstitutionally excessive, the Louisiana Fourth Circuit Court of Appeal first examined applicable state law.

> La. Const. art. I, §20 explicitly prohibits excessive sentences.  State v. Baxley, 94-2982 (La. 5/22/95), 656 So.2d 973, 977.  Although a sentence is within the statutory limits, the sentence may still violate a defendant's constitutional right against excessive punishment.  State v. Brady, 97-1095 (La. App. 4 Cir. 2/3/99), 727 So.2d 1264, 1272.  However, the penalties provided by the legislature reflect the degree to which the criminal conduct is an affront to society.  Baxley, 656 So.2d 979, citing State v. Ryans, 513 So.2d 386, 387 (La. App. 4 Cir. 1987).  A sentence is constitutionally excessive if it makes no measurable contribution to acceptable goals of punishment, is nothing more than the purposeless imposition of pain and suffering, and is grossly out of proportion to the severity of the crime.  State v. Johnson, 96-3041 (La.

---

[11]See rec. doc. 3, petitioner's supporting memorandum at p. 8.

[12]See rec. doc. 3, petitioner's supporting memorandum at p. 11.

11

3/4/98), 709 So.2d 672.   A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice.   <u>Baxley</u>, 656 So.2d at 979.

The minimum sentences imposed on multiple offenders by the Habitual Offender Law are presumed to be constitutional.   <u>State v. Johnson</u>, 97-1906 (La. 3/4/98), 709 So.2d 672.   The defendant bears the burden of rebutting the presumption that the mandatory minimum sentence is constitutional.   <u>State v. Short</u>, 96-2780 (La. App. 4 Cir. 11/18/98), 725 So.2d 23.   A court may only depart from the minimum sentence if it finds that there is clear and convincing evidence in the particular case before it that would rebut the presumption of constitutionality.   <u>State v. Johnson</u>, 97-1906 at p. 7, 709 So.2d at 676.

<u>Jones</u>, No. 2002-KA-0438 at p. 4.

The state appellate court then examined the applicable facts, ultimately concluding that the district court did not err in imposing upon petitioner a life sentence.

At the resentencing hearing, the district judge looked at the pre-sentence investigation report and noted that Jones "received an other than honorable discharge from the Navy in 1994" and that the discharge was the result of drug abuse.   The court continued:

Mr. Jones admitted to the probation and parole agent ... that he is a drug user; however, the probation agent indicates that the subject is an admitted drug user who would like the Court to believe that his drug addiction has led to his criminal conduct; however, the reporting agent goes on to state that, "In reviewing the subject's criminal history, we find that the subject has a" - and I quote - "flagrant disregard for the law," closed quote.   The agent goes on to report that over a twenty year period the subject has had over forty-five arrests, multiple misdemeanor convictions, three felony convictions, and two 701 releases.   These

12

impediments of law are documented in both Court records and law enforcement rap sheets. The defendant's charges range from obstruction of sidewalks to possession with intent to distribute cocaine. Although Mr. Jones did not receive his first felony conviction until he reached the age of 35, he has been having negative interactions with the law since he was 17 years old. In fact, he received his first misdemeanor conviction at the age of 17. The subject's criminal history indicates that he is unable to conform to the laws which govern our society.

The pre-sentence investigatory report answers the questions this Court posed in the earlier opinion. The report indicates that Jones has been arrested for battery seven times and convicted three times. He has two prior possession of cocaine convictions and five additional arrests for possession of cocaine as well as four arrests for possession of drug paraphernalia. He has been arrested for theft four times, armed robbery twice, simple burglary twice, attempted simple burglary once, and simple robbery twice. He has many more arrests. His documented work history consists of only one quarter of employment in 1997. Given his criminal history, we do not find that the court erred in imposing the mandated sentence of life imprisonment on Jones.

Jones, No. 2002-KA-0438 at pp. 5-6.

Applicable Supreme Court precedent makes clear that the fact that a petitioner's conviction is based upon a non-violent crime does not render his or her life sentence, imposed as a result of prior convictions, unconstitutionally excessive. In Rummel v. Estelle, 445 U.S. 263 (1980), petitioner was convicted of felony theft in connection with his acquisition, by false pretenses, of $120.75. Petitioner was further determined to have been convicted of two prior felonies, specifically, fraudulently using a credit

card to obtain $80.00 worth of goods or services, and passing a forged check in the amount of $28.36. Thereafter, in accordance with the Texas recidivist statute,[13] the trial court imposed upon petitioner a mandatory life sentence. Petitioner argued that such a sentence "was 'grossly disproportionate' to the three felonies that formed the predicate for his sentence and that therefore the sentence violated the ban on cruel and unusual punishments of the Eighth and Fourteenth Amendments." Rummel, 445 U.S. at 265. The Supreme Court disagreed, reasoning that:

> at the time that [petitioner] obtained the $120.75 by false pretenses, he already had committed and had been imprisoned for two other felonies, crimes that Texas and other States felt were serious enough to warrant significant terms of imprisonment even in the absence of prior offenses. Thus the interest of the State of Texas here is not simply that of making criminal the unlawful acquisition of another person's property; it is in addition the interest, expressed in all recidivist statutes, in dealing in a harsher manner with those who by repeated criminal acts have shown that they are simply incapable of conforming to the norms of society as established by its criminal law....
>
> Nearly 70 years ago, ... this Court rejected an Eighth Amendment claim that seems factually indistinguishable from that advanced by Rummel in the present case. In Graham v. West Virginia, 224 U.S. 616, 32 S.Ct. 583, 56 L.Ed. 917 (1912), this Court considered the case of an apparently incorrigible horse-thief who was sentenced to life imprisonment under West Virginia's recidivist statute. In 1898 Graham had been convicted of stealing "one bay mare" valued at $50; in 1901 he had

---

[13]The statute provided, in pertinent part, that "[w]hoever shall have been three times convicted of a felony less than capital shall on such third conviction be imprisoned for life in the penitentiary."

been convicted of "feloniously and burglariously" entering a stable in order to steal "one brown horse, named Harry, of the value of $100"; finally, in 1907 he was convicted of stealing "one red roan horse" valued at $75 and various tack and accessories valued at $85. Upon conviction of this last crime, Graham received the life sentence mandated by West Virginia's recidivist statute. This Court did not tarry long on Graham's Eighth Amendment claim, noting only that it could not be maintained "that cruel and unusual punishment [had] been inflicted." Id., at 631, 32 S.Ct., at 588.

Rummel, 445 U.S. at 276-77, 100 S.Ct. at 1140-41 (footnotes omitted). See also Lockyer v. Andrade, 538 U.S. 63, 123 S.Ct. 1166 (2003)(habeas relief denied with respect to petitioner's claim that his sentence of two consecutive terms of 25 years to life under "California's three strikes law," resulting from his conviction on two felony counts of petty theft along with a prior conviction, violated the constitutional prohibition against cruel and unusual punishment).

Based upon the above, the Court finds that the Louisiana Fourth Circuit's rejection of petitioner's excessive sentence claim does not represent an unreasonable application of pertinent Supreme Court law. See Hill, 210 F.3d at 485. Accordingly, the instant claim is without merit.

### Claim 3:  Entitled to be Sentenced under Amended Version of La. R.S. 15:529.1(A)(1)(b)(ii)

In October, 1999, petitioner was charged with distribution of cocaine. In April, 2000, petitioner, following a jury trial, was

found to be guilty as charged.  In September, 2000, petitioner was adjudicated to be a third felony offender and sentenced to life imprisonment under the provisions of LSA-R.S. 15:529.1(A)(1)(b)(ii) which provided for a mandatory life sentence if "the third felony conviction **or** either of the two prior felonies is a felony defined ... as a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for **more than five years** ... [emphasis added]".[14]

On June 13, 2001, petitioner's initial life sentence was vacated by the court of appeal and the matter was remanded to the district court.  See Jones, No. 2000-KA-1894 at p. 9.  Two days later, on June 15, 2001, by virtue of Act No. 403, LSA-R.S. 15:529.1(A)(1)(b)(ii) was amended to provide for a mandatory life sentence if "the third felony **and** the two prior felonies are defined ... as a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for **ten years or more** ... [emphasis added]".[15]  Thereafter, petitioner was again sentenced to

---

[14]As the Louisiana Fourth Circuit noted, in addressing the instant issue, petitioner's "record" fell within the above provision of La. R.S. 15:529.1 because his third felony conviction for cocaine distribution "require[d] a sentence of five to thirty years". Jones, No. 2002-KA-0438 at p. 6.

[15]Under the above-quoted amended version of the pertinent statute, petitioner would not have been subject to a mandatory life sentence "because his prior convictions for possession of cocaine [were] not punishable by a term of ten years or more." Jones, No. 2002-KA-0438 at pp. 6-7.

life imprisonment.

Petitioner argues that because his resentencing took place after the June 15, 2001 amendment to La. R.S. 15:529.1(A)(1)(b)(ii) and because, under the amended version of La. R.S. 15:529.1(A)(1)(b)(ii), he would not have been considered a third felony offender subject to a mandatory life sentence,[16] his resentencing to a life sentence constituted a violation of his constitutional rights under the Fourteenth Amendment.   This argument, however, is without merit since, as the Louisiana Fourth Circuit noted, it is the penalty in effect at the time the offense is committed which is applicable for sentencing purposes.   "'The fact that a statute is subsequently amended to lessen the possible penalty does not extinguish liability for the offense committed under the former statute.'"   Jones, No. 2002-KA-0438 at pp. 7-8, quoting State v. Narcisse, 426 So.2d 118 (La. 1983) (citations omitted).

---

[16]As noted earlier, petitioner would not be a third offender subject to a mandatory life sentence under the amended version of La. R.S. 15:529.1(A)(1)(b)(ii) because, as the Louisiana Fourth Circuit explained, the amended statute "requires that all three prior offenses meet the standard the statute delineates" and petitioner's "prior convictions for possession of cocaine [were] not punishable by a term of ten years or more." Jones, No. 2002-KA-0438 at pp. 6-7.   Instead, petitioner "would [have been] sentenced under La. R.S. 15:529.1(A)(1)(b)(i) which provides for a sentence of not less than two-thirds of the maximum sentence for the conviction and not more than twice the longest possible term prescribed for the first conviction.   Thus, under that law, his sentence [would have been] between twenty and sixty years." Id. at p. 7.

In the factually similar case of <u>State v. Parker</u>, 871 So.2d 317 (La. 2004), the defendant committed the pertinent offense, was convicted, and was adjudicated a third felony offender and given a mandatory life sentence prior to the June 15, 2001 amendment to La. R.S. 15:529.1(A)(1)(b)(ii). Following the June 15, 2001 amendment, defendant's habitual offender adjudication was vacated, the matter was remanded to the district court for further proceedings and, on remand, defendant was again adjudicated to be a third felony offender and sentenced to life imprisonment.

The issue squarely presented to the Louisiana Supreme Court in <u>Parker</u>, 871 So.2d at 319 (citation omitted), was "whether defendant should be sentenced according to the habitual offender law in effect at the time of the commission of the offense [i.e., the pre-amended version of La. R.S. 15:529.1(A)(1)(b)(ii)] or that in effect at the time of the habitual offender adjudication and sentencing [i.e., the post-amended version of La. R.S. 15:529.1(A(1)(b)(ii)]."[17] The state high court determined that the time of the commission of the offense was the controlling date for purposes of determining which version of La. R.S.

---

[17]As with petitioner, Parker, under the amended version of La. R.S. 15:529.1(A)(1)(b)(ii), would not have been subject to a mandatory life sentence, but instead, would have been subject to the sentencing provisions set forth in La. R.S. 15:529.1(A)(1)(b)(i). Given the three crimes comprising Parker's adjudication as a third felony offender, the maximum sentence he faced, under La. R.S. 15:529.1(A)(1)(b)(i), was "ten years imprisonment at hard labor." <u>Parker</u>, 871 So.2d at 321.

15:529.1(A)(1)(b)(ii) should be applied.  The court reasoned:

> The general rule long applied in this state is that the law in effect at the time of the commission of the offense determines the penalty to be applied to the convicted accused.  As previously explained, defendant became a third felony offender on the date he committed the underlying felony offense.  He was therefore subject to the punishment provided for by the law as it existed on that date; that is, defendant should be punished pursuant to the provisions of La. R.S. 15:529.1(A)(1)(b)(ii) in effect prior to the ameliorative changes made by Act 403.  This decision is in accord with the statement in Act 403 that its provisions shall have prospective effect only and with Louisiana's strong presumption against retroactivity of statutes.  As we noted in [State v.]Sugasti, [820 So.2d 518 (La. 2002),] the legislature could have employed language in Act 403 signifying its intent that the more lenient sentencing provisions were to take immediate effect if it so desired.

> Policy considerations also convince us that the applicable penalty provision is that existing on the date of the commission of the offense.  The contrary determination that defendant is subject to the penalty provision in effect at the time of his adjudication as a habitual offender would allow the district attorney, rather than defendant's own act, to control the fixing of defendant's status as a habitual offender and the applicable penalty depending on when the habitual offender bill is filed.  Concomitantly, if we were to adopt the position that the date of the habitual offender adjudication fixes the applicable penalty provision, some defendants might be encouraged to delay proceedings to coincide with the effective dates of more lenient sentencing provisions.  Either of these situations would wreak havoc with our sense of fairness, and, in a practical sense, with the dockets of the courts.

> Finally, we recognize that the purpose of the provisions of Act 403 at issue was to reduce the sentences of certain habitual offenders in order to ease the financial burden on the state.  We note, however, that the Act contains no indication that the legislature intended for the provisions of La. R.S. 15:529.1(A)(1)(b)(ii), as amended by Act 403, to apply to all sentences imposed following the effective date of the

statute.  Thus, given the language employed in the Act, including the specific declaration that the provisions of the Act are to have prospective effect only, and the policy considerations explained above, we reaffirm the principles and analysis consistently employed in our prior jurisprudence. Consequently, we find that defendant should be sentenced according to the law that was in effect at the time he committed the offense.

Parker, 871 So.2d at 326-327 (footnote omitted).[18]

### Claim 4):  La. R.S. 15:529.1 Is Unconstitutional

Petitioner acknowledges, and a review of the applicable case law confirms, that the Supreme Court has recognized the constitutionality of state recidivist statutes, such as La. R.S. 15:529.1., on numerous occasions.  See Rummel, supra; Ewing v. California, 538 U.S. 11 (2003); see also U.S. v. Smith, 818 F.2d 687, 691 (9th Cir. 1987) ("The Supreme Court has repeatedly upheld recidivist mandatory sentencing statutes against attacks on a wide variety of constitutional grounds, including due process. See Spencer v. Texas, 385 U.S. 554, 559-60, 87 S.Ct. 648, 651-52, 17 L.Ed.2d 606 (1967).)".  Petitioner further acknowledges that this court is bound by existing law.  However, petitioner believes that in "an opinion, yet to be issued ... the Supreme Court will hold

---

[18]Petitioner, in support of the instant claim, cites only one federal case, Bradley v. United States, 410 U.S. 605 (1973).  See rec. doc. 3, petitioner's supporting memorandum at pp. 15-16. However, a review of the pertinent opinion reflects that it does not support petitioner's position, but rather, sets forth that the date of sentencing is not controlling for purposes of determining the applicable penalty provision.  Id., 410 U.S. at 610-611.

that recidivist statutes, like ... 15:529.1, are unconstitutional."[19]

The Louisiana Fourth Circuit Court of Appeal, in rejecting the instant claim, acknowledged that, in accordance with petitioner's concession, it was indeed bound to "follow the current law." Accordingly, the state appellate court rejected petitioner's argument that La. R.S. 15:529.1 was unconstitutional based upon its finding that petitioner's "argument is premature at this time." Jones, No. 2002-KA-0438 at p. 8.

This court, like the state appellate court, is bound by existing law which holds that recidivists statutes, like La. R.S. 15:529.1, are constitutional.[20]  Accordingly, petitioner's claim for habeas corpus relief, based upon an anticipated change in existing law, is without merit.

**Claim 5):  La. R.S. 15:529.1, As Applied to Recidivists Whose Predicate Offenses Were the Result of Drug Addiction, Violates the Eighth Amendment Ban on Cruel and Unusual Punishment**

Petitioner argues that his predicate offenses for possession of crack cocaine were the result of his drug addiction.  Based upon the Supreme Court's decision in Robinson v. California, 370 U.S. 660, 666-667 (1962), wherein the Court determined that a California statute punishing a defendant based solely upon his status as a

---

[19]See rec. doc. 3, petitioner's supporting memorandum at p. 21.

[20]See discussion supra at p. 20.

drug addict "inflicts a cruel and unusual punishment in violation of the Fourteenth Amendment", petitioner argues that La. R.S. 15:529.1, to the extent it enhanced his sentence based upon predicate offenses based upon his status as a drug addict, is unconstitutional.

In Robinson, 370 U.S. at 660 (footnote omitted), the California statute at issue made "it a criminal offense for a person to 'be addicted to the use of narcotics.'"[21]  The Court specifically distinguished the above statute from "valid" statutes imposing a criminal penalty for "the unauthorized manufacture, prescription, sale, purchase or **possession** of narcotics".  Id., 370 U.S. at 664 (emphasis added).  The Court reasoned:

> This statute, therefore, is not one which punishes a person for the use of narcotics, for their purchase, sale or possession, or for antisocial or disorderly behavior resulting from their administration.  It is not a law which even purports to provide or require medical treatment.  Rather, we deal with a statute which makes the "status" of narcotic addiction a criminal offense, for which the offender may be prosecuted "at any time before he reforms."  California has said that a person can be continuously guilty of this offense, whether or not he has ever used or possessed any narcotics within the State, and whether or not he has been guilty of any antisocial behavior there.

---

[21]Specifically, the statute provided, in pertinent part:  "No person shall use, or be under the influence of, or be addicted to the use of narcotics, excepting when administered by or under the direction of a person licensed by the State to prescribe and administer narcotics."

<u>Id.</u>, 370 U.S. at 666.

In the instant matter, petitioner's predicate offenses punished him for his possession of narcotics, specifically, crack cocaine, not his status as a drug addict.  As such, his predicate offenses, unlike the offense at issue in <u>Robinson</u>, <u>supra</u>, are not unconstitutional and, correspondingly, La. R.S. 15:529.1, which enhanced petitioner's sentence based, in part, upon his two possession of crack cocaine predicate offenses, is not unconstitutional.  Accordingly, the instant claim for federal habeas corpus relief is without merit.

**Claim 6):  Ineffective Assistance of Counsel**

Petitioner argues that counsel was unconstitutionally ineffective due to his failure to insist that petitioner be allowed, at his resentencing hearing, to present his testimony, along with the testimony of his mother, father, stepmother, and brother, a 15-year veteran of the New Orleans police force. Petitioner, along with the above-listed family members, would have offered testimony regarding "petitioner's drug addiction".[22]

In <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), the United States Supreme Court established a two-prong test for evaluating claims of ineffective assistance of counsel.  A petitioner

---

[22]<u>See</u> rec. doc. 3, petitioner's supporting memorandum at pp. 25-26.

seeking relief must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced his defense. See id. at 697. If a court finds that petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e., deficient performance or actual prejudice, it may dispose of the claim without addressing the other prong. Id.

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. See Styron v. Johnson, 262 F.3d 438, 450 (5th Cir.2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." Little v. Johnson, 162 F.3d 855, 860 (5th Cir.1998). Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. See Strickland, 466 U.S. at 689. "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting Strickland, 466 U.S. at 690). Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir.1986); Mattheson v. King, 751 F.2d 1432, 1441 (5th Cir.1985).

In order to prove prejudice, petitioner "must show that

there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.  A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id.

In the instant matter, the court finds that petitioner has failed to make the requisite prejudice showing in light of the information established by virtue of the pertinent presentence investigation report reflecting petitioner's extensive criminal record.  As noted earlier, the report reflected that petitioner's criminal history spanned "over a twenty year period", that he had "over forty-five arrests, multiple misdemeanor convictions, three felony convictions, and two 701 releases."[23]  Based upon this information, the court finds that it is not reasonably probable that petitioner's resentencing would have been different if not for counsel's alleged deficiency in failing to insist that petitioner, along with his witnesses, be allowed to offer testimony regarding petitioner's drug addition.

Accordingly;

## RECOMMENDATION

It is hereby RECOMMENDED that the petition of Gary Jones for habeas corpus relief be DENIED WITH PREJUDICE.

---

[23]See discussion supra at pp. 9-10.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this 24th day of   February   , 2008.


ALMA L. CHASEZ
United States Magistrate Judge

26